JUDGE CROTTY

13 CIV 6075

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GARY MILLER,

Plaintiff,

-against-

G-UNIT RECORDS, INC. d/b/a THISIS50.COM,

Defendant,
--------------------------------------------------------------x

COMPLAINT

ECF CASE

RECEIVED AUG 28 2013 U.S.D.C. S.D. N.Y. CASHIERS

Plaintiff, GARY MILLER, by his attorneys, EDWARD C. GREENBERG, LLC alleges as follows:

**PARTIES**

1. Plaintiff GARY MILLER (hereinafter "MILLER") is a resident of the State of New York, residing in the City of New York, County of Queens.

2. Defendant G-UNIT RECORDS, INC. d/b/a THISIS50.COM (hereinafter "THISIS50"), is a domestic business corporation, duly organized and existing under the laws of the State of New York, with upon information and belief, an office to do business located at 1410 Broadway, Suite 1506, New York, New York 10018.

**JURISDICTION AND VENUE**

3. This is a civil action for copyright infringement.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1338.

5. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1400.

**FACTS COMMON TO ALL CLAIMS**

6. MILLER (a/k/a. "G.N. Miller") is a well-known photojournalist, staff photographer for the New York Post, and a retired New York City police detective.

7. MILLER is a professional photographer who earns his livelihood by licensing rights to third parties to employ his photographic images.

8. That MILLER's photography is nationally syndicated.

9. Defendant THISIS50 is a media website that publishes images, news bites, videos, offers a forum for members to post content, and hosts a store for the sale and advertising of commercial products.

10. That, upon information and belief, the website thisis50.com is owned and operated by G-Unit Records, Inc., which is owned and operated by rapper 50 Cent.

11. That the credit "Created by 50 Cent" is printed at the bottom of each page of the thisis50.com website, inclusive of a link to 50 Cent's profile and blog, which features content promoting 50 Cent, the 50 Cent brand, and 50 Cent's music and merchandise.

12. That 50 Cent's birth name is, upon information and belief Curtis James Jackson III, but is better known by his stage name "50 Cent".

13. That, upon information and belief, 50 Cent is a brand mogul, having founded the record label "G-Unit Records", the film production company "G-Unit Films", another film production company "Cheetah Vision", and having partnered with Reebok for the creation of G-Unit Sneakers.

14. That, upon information and belief, 50 Cent has released five albums, each of which has reached high commercial success.

15. That, upon information and belief, 50 Cent has published a children's book entitled "Playground", with an anti-bullying message.

16. That, upon information and belief, 50 Cent has a clothing line called "G-Unit Clothing Company".

17. That, upon information and belief, the thisis50.com website is used as a platform to actively promote 50 Cent, the 50 Cent brand, 50 Cent merchandise, G-Unit Records and the G-Unit brand.

18. That, upon information and belief, the official website for G-Unit Records, Inc., www.g-unitrecords.com, automatically redirects to thisis50.com.

19. That the website thisis50.com boasts commercial advertisements for its sole economic benefit.

20. MILLER is well known for his iconic photo of Tupac Shakur, a copy of which is annexed hereto as **EXHIBIT "A"** (hereinafter the "Image" or "Subject Image").

21. MILLER is the sole owner, creator, and holds the rights in the Subject Image, and duly registered said Image with the United States Copyright Office on February 5, 2004, registration number VA 1-233-155 (a copy of the copyright registration is annexed hereto as **EXHIBIT "B")**.

22. The relevant facts surrounding the Subject Image are as follows: On November 30, 1994 famed rap artist and actor Tupac Shakur was the target of an attempted murder at 723 7th Avenue in New York City.

23. Plaintiff, who had extensive professional experience covering the "rap music scene", was familiar with Mr. Shakur's associates and habits, and thus was almost immediately at the scene of the shooting wherein he created photographic images of Mr. Shakur.

24. Upon information and belief, Tupac was aware of Plaintiff photographing him, and in a characteristic display of defiance, made a profane gesture towards the camera while being carried into the ambulance on a stretcher.

25. That, upon information and belief, Tupac posed for the photograph, which was created by MILLER.

26. That act of defiance has served in the days subsequent thereto and up through today as the defining image of Tupac Shakur in pop culture.

27. MILLER's photographic Image of this spirited gesture ran prominently in the New York Post.

28. The Subject Image achieved an iconic stature and has come to symbolize various aspects of rap culture, including but not limited to the violent conflicts by and between prominent members of the rap world.

29. On September 7, 1996, Tupac Shakur was shot yet again. This time in a drive-by shooting in Las Vegas, Nevada and he subsequently died from his wounds. Since Tupac's death, the facts and circumstances surrounding Tupac's shooting, including MILLER's creation of the iconic Subject Image, have been well documented in movies, books, and biographies about Tupac and or the violent aspects of the rap culture.

30. That no one has ever been charged with his murder and the mystery of his death has been the basis for countless articles, films, media pieces, documentaries and books.

31. Since Tupac's death, there has been a high demand for the use of the Subject Image in both the news and entertainment industries.

32. In the roughly 17 years since Tupac's death, he has been the subject of numerous articles, books, and references in the media.

33. Tupac and the circumstances of his death have come to symbolize the rap culture.

34. By virtue of his death, the supply of Tupac images while shot, is very limited and the Subject Image is truly *sui generis*.

35. Plaintiff vigorously defends his copyright in the Subject Image.

36. That on or about June 15, 2011, THISIS50 employed the Subject Image in connection with a web post entitled "2Pac Quad Studio Shooter Confesses" (hereinafter the "Offending

Use", "Subject Use", or "Unauthorized Use", a copy of which is annexed hereto as **EXHIBIT "C")**.

37. That THISIS50 has never sought, obtained, nor requested from Plaintiff a license to use the Subject Image.

38. That THISIS50 employed the Subject Image in the Offending Use without having sought or obtained a license, authorization or consent from Plaintiff.

39. That plaintiff's identity is well-known and easily could have been located by THISIS50.

40. That MILLER is well known as the author of the iconic Subject Image.

41. That MILLER works as a photojournalist for the New York Post, a publication that arguably reaches the same audience as the Brooklyn Daily THISIS50 and which is readily accessible to THISIS50.

42. That MILLER has litigated claims sounding in copyright infringement against major media companies regarding the Subject Image, such information of which is a public record.

43. That THISIS50 knew or should have known that MILLER was the author and copyright holder in the Subject Image and should have sought and obtained a license, authorization or consent for the use of the Subject Image, prior to engaging in such use.

44. That, upon information and belief, THISIS50 is a sophisticated licensor and licensee of intellectual property and employs attorneys and/or systems or protocols to secure usage of the intellectual property created by third parties.

45. Defendant's website (www.THISIS50.com), which employed the Offending Image, purports to be "© 2012 Created by 50 Cent".

46. On January 13, 2012, Plaintiff's counsel sent Defendant a written demand and notice letter, addressed to one Correntin Villemeur via email, who is upon information and belief, the

General Manager of Thisis50.com and G-Unit Records, Inc., and describes himself as "50 Cent's digital guy".

47. That said January 13, 2012 letter demanded to Defendant *inter alia*, to remove the Image being employed on Defendant's website, that Defendant's use of Plaintiff's Image was in violation of MILLER's copyright, and that Defendant had no right to use the Subject Image in any way shape or form.

48. That said January 13, 2012 letter included a copy of Plaintiff's copyright registration, and at least one example of the Unauthorized Use.

49. That, upon information and belief, in or around January of 2013, G-Unit Records was a subsidiary of Universal Music Group's Interscope Records.

50. That on January 3, 2013, the previously stated January 13, 2012 letter was forwarded to Interscope Records.

51. That on February 25, 2013, Plaintiff's counsel issued and delivered a separate demand and notice letter, addressed to copyright@ning.com pursuant to the "DMCA Notification Guidelines" as set forth on the thisis50.com website. That upon information and belief, thisis50.com is powered by Ning.com.

52. That despite the above-mentioned January 13, 2012 and February 25, 2013 letters, the Subject Image remained on the thisis50.com website.

53. That in a final attempt to obviate the need to commence litigation, plaintiff's counsel issued and delivered a third demand and notice letter, by hand delivery to G-Unit Records, Inc. at the address listed as their "Principal Executive Office" with the New York Secretary of State (a copy of said letter is annexed hereto as **Exhibit "D"**).

54. That despite plaintiff's repeated attempts to obviate the need for litigation, the iconic Subject Image created by Plaintiff **remains** on defendant's website thisis50.com.

55. That Defendant, by employing the Subject Image on the thisis50.com website, has traded on the attention getting nature and iconic stature of the Subject Image to bring greater attention to thisis50.com, for the sole economic benefit and advantage of defendant.

56. That, upon information and belief, THISIS50 profits from the number of viewers who go to the thisis50.com website, from the amount of merchandise it sells, and from the number and quality of the website advertisements that it attains from third parties.

57. That, upon information and belief, THISIS50 has willfully, knowingly, and /or purposely failed to remove the Subject Image from the thisis50.com website and is willfully, knowingly, and/or purposely employing same, without a license, authorization or consent from plaintiff for such use.

58. That, upon information and belief, THISIS50 did in fact benefit from its use of the Subject Image.

59. Plaintiff has sought to obviate judicial intervention and the filing of suit. Such efforts have gone without success.

60. That THISIS50 has brazenly employed plaintiff's iconic Subject Image without plaintiff's license, authorization or consent, in violation of his copyright, and without just compensation to him.

61. That the Defendant has no defense at law to the claims set forth herein.

62. That the full nature and extent of all infringing uses of the Subject Image by defendant are unknown to Plaintiff at the time of this Complaint, said information being within the sole knowledge, custody, and control of Defendant, but that Plaintiff reasonably expects to ascertain such information through routine discovery in this action.

63. Paragraphs "1" through "61" are incorporated by reference with respect to each of the below claims for relief.

**FIRST CLAIM FOR RELIEF**
Copyright Infringement (Willful)
Under Section 501 of the Copyright Act

64. That the use of the Plaintiff's Image by the Defendant in connection with the website "www.THISIS50.com" was and is without the plaintiff's authorization, license or consent.

65. The Defendant has infringed the copyright in Plaintiff's Image.

66. The acts of the Defendant constitute federal statutory copyright infringement under Section 501 of the Copyright Act in violation of the rights granted to MILLER as copyright holder.

67. That, upon information and belief, Defendant's use of the subject Image was willful, intentional and in bad faith.

68. That Defendant had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records and/or its own records and/or the records of this Court, knew or should have known that Plaintiff held the copyright in the Subject Image, that Defendant never had (at any of the relevant times herein) a license, consent, or authorization by Plaintiff for the use of Plaintiff's Image on its website or in any other medium of news source employed by Defendant, and that any such use would be in violation of Plaintiff's copyright.

69. That as a result of Defendant's acts, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

70. That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of Defendant's copyright infringement, and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual

damages and any additional profits of the Defendant attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

**SECOND CLAIM FOR RELIEF**
Copyright Infringement
Under Section 501 of the Copyright Act

71. That the use of the Plaintiff's Image by the Defendant in connection with the website "www.THISIS50.com" was and is without the plaintiff's authorization, license or consent.

72. That, upon information and belief, the Defendant has infringed the copyright for Plaintiff's Image.

73. That the aforementioned acts of the Defendant constitute federal statutory copyright infringement under Section 501 of the Copyright Act in violation of the rights granted to MILLER as copyright holder.

74. That, upon information and belief, Defendant had actual and/or constructive knowledge and/or through the exercise of ordinary business care and/or the examination of public records, its own records and/or the records of this Court knew or should have known that the plaintiff held the copyright in the Subject Image, that Defendant never had (at any of the relevant times herein) a license, consent, or authorization by Plaintiff for the use of Plaintiff's Image on its website or in any other medium of news source employed by Defendant and that any such use would be in violation of Plaintiff's copyright.

75. That, upon information and belief, Defendant's use of the Image was negligent and/or with reckless disregard and was done without the proper procedures and protocols in place to prevent the unauthorized use of intellectual property owned and created by a third party.

76. That as a result of Defendant's acts, Plaintiff has been and will continue to be damaged in an amount as yet to be determined.

77. That Plaintiff is further entitled to damages, attorneys' fees and costs under Section 504 and 505 of the Copyright Act, 17 U.S.C. Section 101 et., seq., given the willful, intentional, malicious and bad faith nature of Defendant's copyright infringement, and as an alternative to statutory damages, Plaintiff, at his election prior to judgment is entitled to recover his actual damages and any additional profits of the Defendant, attributable to the infringement as under 17 U.S.C. Sections 504 (a)-(b).

**JURY DEMAND**

51. That Plaintiff requests a trial by jury of all issues.

**WHEREFORE**, plaintiff demands judgment as against the defendant as follows:

**ON THE FIRST CLAIM-** (A) Award to plaintiff his actual damages incurred as a result of defendant's infringements, and all profits realized as a result of their infringements, in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each individual act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendant, including but not limited to wholly owned subsidiaries, from employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted Image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

**ON THE SECOND CLAIM-** (A) Award to plaintiff his actual damages incurred as a result of defendant's infringements, and all profits realized as a result of their infringements, in amounts to be determined at trial; or (B) in the alternative, at plaintiff's election, an award to plaintiff maximum statutory damages pursuant to 17 U.S.C. § 504 for each individual act of infringement, and for an order of injunction permanently enjoining and prohibiting the defendant, including but not limited to wholly owned subsidiaries, affiliates and assigns, from

employing or utilizing in any manner or media whatsoever, including all future uses, sales, transfers, assignments, or licensing of any and all of plaintiff's copyrighted Image, pursuant to 17 U.S.C. § 502 and for an award of costs and attorneys' fees pursuant to 17 U.S.C. § 505;

Prejudgment interest on all sums due;

And such other and further relief as this Court may deem just and proper inclusive of any and all relief or remedies allowable by the statutes referenced above or applicable hereinabove.

Dated: New York, NY
August 28, 2013

Yours, etc.,

EDWARD C. GREENBERG, LLC.

By: Edward C. Greenberg, Esq. (ECG 5553)
By: Tamara L. Lannin, Esq. (TL 3784)
570 Lexington Ave., 19th Floor
New York, NY 10022
Tel: (212) 697-8777
Fax: (212) 697-2528
*Attorneys for Plaintiff*